1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    MELISSA L. BAYNE,                        Case No.  21-cv-01959-JCS

             Plaintiff,
8                                            **ORDER GRANTING REGENTS OF**
                                             **UNIVERSITY OF CALIFORNIA'S**
9        v.                                  **MOTION TO DISMISS AND**
                                             **GRANTING IN PART AND DENYING**
10   BOWLES HALL FOUNDATION, et al.,         **IN PART BOWLES HALL**
                                             **FOUNDATION'S MOTIONS TO**
             Defendants.                     **DISMISS**
11

12                                           Re: Dkt. Nos. 14, 15

13

14

15   **I.      INTRODUCTION**

16          Plaintiff Melissa Bayne ("Dr. Bayne") brings this gender discrimination and retaliation

17   case against the Regents of the University of California ("Regents") and the Bowles Hall

18   Foundation ("BHF"), asserting that Defendants declined to renew her employment contract,

19   thereby effectively terminating her as Dean of Bowles Hall Residential College, in retaliation for

20   Dr. Bayne's reporting of conduct by another Bowles Hall advisor who allegedly created a toxic

21   culture for female residents.  The Regents removed the case from Alameda County Superior Court

22   to this Court under 28 U.S.C. §1441 on the basis of federal question jurisdiction. Presently before

23   the Court are: 1) BHF's Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P.

24   12(b)(6) ("BHF Motion"); and 2) the Regents' Motion to Dismiss the Regents of the University of

25   California from Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) ("Regents

26   Motion").  In addition, BHF has filed a notice that it joins in the Regents' Motion.  The Court held

27   a hearing on the Motions on July 2, 2021 at 9:30 a.m.  For the reasons stated below, the Regents

28

1    Motion is GRANTED.  The BHF Motion is GRANTED in part and DENIED in part.[1]

2    **II.      BACKGROUND**

3          **A.      The First Amended Complaint**

4          According to the First Amended Complaint ("FAC"), which is the operative complaint, Dr.

5    Bayne was hired by BHF to be Dean of Students at Bowles Hall Residential College ("Bowles

6    Hall") around August 2016, when the previously all-male Bowles Hall re-opened as a co-ed

7    institution. FAC ¶ 10.  Dr. Bayne is also a faculty member in UC Berkeley's Psychology

8    Department and the Director of UC Berkeley's Psychology Post-Baccalaureate Program. *Id*.

9    Around the same time BHF hired Dr. Bayne, it also hired Dr. Alexei Vranich as an Assistant Dean

10   of Students at Bowles Hall. *Id*.  Dr. Bayne's and Dr. Vranich's jobs at Bowles Hall were similar,

11   involving advising undergraduates regarding academic resources available on campus, helping to

12   organize and appearing at various social functions, and supporting the students with their

13   academic needs. *Id.*  ¶ 11.

14         Dr. Bayne alleges that from early in Dr. Vranich's employment, he acted inappropriately

15   by making disparaging comments about female students' gender and ethnic and racial

16   backgrounds to male students. *Id.*  ¶ 12.  Female students began complaining to Dr. Bayne about

17   Dr. Vranich's "uncouth and offensive behavior." *Id.*  ¶ 13.  On April 6, 2018, there was an

18   "Academic Advising Working Group Meeting" to discuss ongoing issues and suggestions for

19   changes.  *Id.* In preparation for the meeting, undergraduate students compiled a report to present to

20   the working group, but the night before meeting, "a new report was drafted by a group of male

21   students and the comments and concerns of the female students were omitted."  *Id.*  Around April

22   25, 2018, Dr. Bayne convened a focus group in her apartment for all the women living at Bowles

23   Hall, where some expressed concern over perceived sexism by the administration and by Dr.

24   Vranich in the way he distributed student resources and verbally harassed women. *Id.* ¶ 14.

25         Around the same time, BHF's Board of Directors ("BOD") invited Dr. Bayne to discuss

26   complaints regarding her performance as Dean of Students.  *Id.* ¶ 15.  "After reviewing Dr.

27   ───────────────

28   [1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).

United States District Court
Northern District of California

Bayne's job description and performance, management concluded [she] was fulfilling her functions." *Id.* ¶ 15. During the meeting, Dr. Bayne "expressed her concerns regarding Bowles Hall's sexist environment which was encouraged by Dr. Vranich's behavior" and requested resources and direction from the BOD to address these issues. *Id.* ¶ 16.

Around May 7, 2018, Dr. Bayne met with Dr. Robert Jacobsen, who suggested to Dr. Bayne that he believed Dr. Vranich was trying to sabotage her reputation and that there was a toxic culture for women at Bowles Hall. *Id.* ¶ 17.

On May 10, 2018, Dr. Bayne hosted a "follow-up forum" that included Dr. Jacobsen and Dr. David Presti, a BOD member and clinical psychologist, as well some female Bowles Hall residents. *Id.* ¶ 18. According to Dr. Bayne, the female residents reiterated that Dr. Vranich had acted inappropriately and in a manner that negatively impacted Bowles Hall's culture. *Id.*

On June 5 and 6, 2018, Dr. Bayne forwarded student emails regarding the "toxic and sexist culture" at Bowles Hall and on June 7, 2018 submitted a "responsible employee report to UC Berkeley Office for the Prevention of Harassment and Discrimination." *Id.* ¶ 19. On the same day she submitted her report, she was invited to participate in a conference call with the executive committee of the BOD, during which President John Baker "chastised Dr. Bayne for reporting these incidents regarding Dr. Vranich to UC Berkeley" and stated that "he would have preferred to handle the matter in-house, without the interference of UC Berkeley." *Id.* ¶ 20. Dr. Bayne alleges that her "statements about the hostile environment at Bowles Hall were dismissed." *Id.* She further alleges that Principal Dennis Lieu noted "it's not like [Dr. Vranich] is touching them or something . . . ." *Id.* The next day, Mr. Baker sent an email to the BOD in which he expressed frustration at Dr. Bayne's report to UC Berkeley; although he did not include Dr. Bayne on the email, Dr. Jacobsen forward a copy of the email to Dr. Bayne. *Id.* ¶ 21.

Dr. Bayne alleges that on June 13, 2018, "UC Berkeley took over the investigation into Dr. Vranich's misbehavior and instructed [BHF] . . . not [to] take any steps without collaborating with UC Berkeley." *Id.* ¶ 22. Around September 5, 2018, Dr. Vranich was terminated by the BOD, "presumably at the request of UC Berkeley." *Id.* ¶ 23. Dr. Bayne was instructed not to discuss the matter and to inform anyone who asked that Dr. Vranich had resigned. *Id.*

United States District Court
Northern District of California

Dr. Bayne alleges that between September and December 2018, she was subjected to various forms of retaliation for reporting Dr. Vranich. *Id.* ¶¶ 24-29. In particular, she alleges that in September, "Student Body President Dakota Brubaker received a stack of letters from students disparaging Dr. Bayne's performance as Dean of Students," *id.* ¶ 24, the "Dean" sign on her apartment door was "ripped down" twice, *id.* ¶¶ 25, 27, and items were stolen from her storage locker; although Dr. Bayne reported the theft to BHF, it took no action in response. *Id.* ¶ 28. In addition, Dr. Bayne alleges that in December 2018, Bowles Hall residents were asked to evaluate the staff, including Dr. Bayne, and of the 41 completed evaluations that were submitted, "10–15 were extremely negative" regarding Dr. Bayne. *Id.* ¶ 29.

Dr. Bayne alleges that male students displayed unfavorable attitudes towards her which worsened after she confronted "some of the students who had associated closely with Dr. Vranich" when they were unloading a large quantity of alcohol from the trunk of a car. *Id.* ¶ 26. The students eventually confessed but faced no disciplinary measures. *Id.* Dr. Bayne alleges that students who had submitted Title IX complaints against Dr. Vranich informed her that they also faced retaliation, of which Dr. Bayne informed the BHF President. *Id.* ¶ 24.

Around January 2, 2019, Dr. Bayne met with BHF's Vice President, Scott Wilson, who agreed her negative student reviews were biased and retaliatory and asked Dr. Bayne to renew her contract for another year. *Id.* ¶ 30. Around February 22, 2019, there was a meeting of the BOD that Dr. Bayne was asked to attend. ¶ 31. At the meeting, Dr. Bayne was told her contract for the 2019/2020 school year would not be renewed and that her last day as dean would be May 23, 2019. *Id.* The BOD gave three reasons for its decision: "1) the BOD did not like some of the students' evaluations; 2) it is common for academic appointments to end after three years; and 3) the BOD 'decided to go a different direction.' " *Id.* ¶ 31–32.

Dr. Bayne alleges that "[a]s a result of the retaliatory and wrongful termination of her employment, [she] has suffered economic damages in the form of lost current and future wages," losing the $800-a-month stipend she received from BHF and "a good apartment that is worth about $2,500 a month." *Id.* ¶ 33. She also alleges that she has suffered damage to her career and her mental health. *Id.* ¶¶ 33-34.

4

United States District Court
Northern District of California

Dr. Bayne asserts the following claims against both BHF and the Regents: 1) retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §12940(h) ("Claim One"); 2) retaliatory termination in violation of 20 U.S.C. §1681 ("Title IX") ("Claim Two"); 3) retaliatory termination in violation of 20 U.S.C. §2000-e ("Title VII") ("Claim Three"); 4) failure to prevent retaliation in violation of FEHA, Cal. Gov't Code §12940(k) ("Claim Four"); and 5) retaliation in violation of Labor Code §1102.5(b) ("Claim Seven"). Against BHF only, Dr. Bayne asserts five additional claims: 1) retaliation in violation of public policy ("Claim Five"); 2) wrongful termination of employment in violation of public policy ("Claim Six"); 3) negligent hiring, supervision, and retention ("Claim Eight"); 4) intentional infliction of emotional distress ("IIED") ("Claim Nine"); and 5) negligent infliction of emotional distress ("NIED") ("Claim Ten").

**B.    BHF Motion**

In its motion, BHF asks the Court to dismiss Claims One, Two, Three, Four, Seven, Eight, Nine, and Ten[2] without leave to amend for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. BHF Motion at 1.  With respect to Dr. Bayne's retaliation claims under FEHA, Title IX, Title VII, and the California Labor Code (Claims One, Two, Three and Seven) ("the Retaliation Claims"), BHF does not challenge the adequacy of Dr. Bayne's allegations as to the first element of those claims, that Dr. Bayne took a protected action in reporting Dr. Vranich's behavior, but argues the facts alleged do not fulfill: 1) the second required element, that BHF took an adverse employment action in declining to renew Plaintiff's employment contract; and 2) the third and last required element, that BHF's action was causally linked to Dr. Bayne's report to UC Berkeley about Dr. Vranich's conduct, as the failure to renew her contract occurred nearly a year after the report. *Id*. at 3–7.  BHF also contends that even if the failure to renew her contract constituted an adverse employment action and she has alleged sufficient facts to show causality, Dr. Bayne's allegations establish that BHF had legitimate

---

[2] At the hearing, BHF stipulated that it is *not* seeking dismissal of Claim Five (retaliation in violation of public policy) or Claim Six (discrimination in violation of public policy), which are asserted only against BHF.

United States District Court
Northern District of California

1   grounds for allowing the contract to expire and Dr. Bayne alleges no facts indicating the reasons

2   BHF gave for its decision were pretext. *Id.* at 4 (*citing Morgan v. Regents of Univ. of Calif.*, 88

3   Cal.App.4th 52, 68 (2000)); 5-6 (citing FAC ¶ 32)).

4       With respect to Dr. Bayne's failure to prevent retaliation claim under FEHA (Claim Four),

5   BHF argues that the inadequacies in the pleading of the Retaliation Claims also defeat any claim

6   for failure to prevent retaliation. *Id.* at 6–7.

7       As to Dr. Bayne's claim for negligent hiring, supervision, and retention (Claim Eight),

8   BHF does not challenge the adequacy of Dr. Bayne's allegations as to the first, second, or fourth

9   required elements of such a claim, that: 1) the employer had a duty towards the plaintiff; 2) the

10  employer breached that duty by hiring, training, supervising, or retaining an unfit employee when

11  the employer knew or should have known that the employee would pose a particularized risk or

12  hazard to others; and 3) that particular harm materialized. *Id.* at 7 (citing *Keum v. Virgin America*

13  *Inc.,* 781 F.Supp.2d 944, 951 (N.D. Cal. 2011)). BHF argues, however, that Dr. Bayne did not—

14  and cannot—allege facts establishing the third required element, "that there was a causal

15  connection between [BHF's] negligence in selecting or controlling the employee, the employee's

16  employment or work, and the harm suffered by the [Plaintiff]," because Dr. Vranich's alleged

17  harassment was directed at third parties rather than at Dr. Bayne. *Id.* at 7.

18      With respect to Dr. Bayne's intentional infliction of emotional distress (IIED) claim

19  (Claim Nine), BHF argues Dr. Bayne's FAC contains only conclusory allegations that are

20  insufficient to establish: 1) the first required element, that BHF intentionally engaged in extreme

21  and outrageous conduct exceeding the bounds of that usually tolerated by a civilized community;

22  and 2) the second required element, that Dr. Bayne suffered severe or extreme emotional distress.

23  *Id.* at 7–8 (citing *Ross v. Creel Printing & Publ'g Co.*, 100 Cal.App.4th 736, 744 (2002)). BHF

24  does not challenge the adequacy of Dr. Bayne's allegations as to the third and last required

25  element, that the outrageous conduct was the actual and proximate cause of Dr. Bayne's emotional

26  distress. *Id.* at 8.

27      BHF also argues that Claim Ten, for negligent infliction of emotional distress (NIED),

28  should be dismissed for failure to state a claim.   According to BHF, the elements of such a claim

1   are "(1) Defendant had a duty of care to Plaintiffs; (2) Defendant breached that duty; (3)

2   Defendant's breach of the duty of care threatened physical injury to the Plaintiffs, unless

3   Defendant's negligence was of a highly unusual type or Plaintiffs' serious emotional distress was

4   a predictable result of breach; (4) Plaintiffs suffered serious emotional distress; (5) Defendant's

5   conduct was a substantial factor in causing Plaintiffs' serious emotional distress; and (6) Plaintiffs

6   suffered damages." *Id*. at 8 (citing *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*, 425

7   F.Supp.3d 1234, 1245 (C.D. Cal. 2019)).  BHF contends Dr. Bayne fails to plead "even the basic

8   elements of an NIED claim," pointing as an example to the fifth required element. *Id*. at 9.

9   According to BHF, Dr. Bayne does not allege anywhere that its conduct was "a substantial factor

10   in causing [her] serious emotional distress." *Id*.

11          BHF also joins in the Regents Motion, described below. *See* Notice for Joinder (dkt. no.

12   18).

13          **C.     Regents Motion**

14          In the Regents Motion, the Regents seek the dismissal of all of the claims asserted against

15   them (Claims One, Two, Three, Four, and Seven) for failure to state a claim under Rule 12(b)(6).

16   With respect to the Retaliation Claims (Claims One, Two, Three and Seven), the Regents argue

17   that Dr. Bayne insufficiently pled the second required element of retaliation, that the Regents took

18   an adverse employment action against her, as Dr. Bayne remains employed by the Regents and the

19   Regents are not alleged to have been involved in the decision to terminate her from her position at

20   Bowles Hall. Regents Motion at 5–6. Similarly, the Regents contend that Claim Four, for failure to

21   prevent discrimination or retaliation in violation of FEHA, fails to state a claim as to the Regents

22   because there can be no liability for failure to prevent discrimination or retaliation where a

23   plaintiff cannot establish that the defendant discriminated or retaliated against them in the first

24   instance. *Id.* at 7 (citing *Trujillo v. North Co. Trans. Dist.*, 63 Cal.App.4th 280, 289 (1998)).

25   According to the Regents, Dr. Bayne has not alleged that they discriminated against her and she

26   has not sufficiently pled retaliation, as discussed above.  Moreover, they contend, Dr. Bayne

27   cannot cure this problem by amending the complaint and therefore, all of Dr. Bayne's claims

28   against the Regents should be dismissed with prejudice and without leave to amend.  *Id.* at 7-8.  In

United States District Court
Northern District of California

7

United States District Court
Northern District of California

support of this position, the Regents represent that in the parties' meet-and-confer discussions, they specifically flagged Dr. Bayne's failure to plead any adverse employment action by the Regents as a fatal defect in her claims against them, yet Dr. Bayne failed to cure this shortcoming in her First Amended Complaint. *Id.*

### D.   Plaintiff's Oppositions

#### 1.   Opposition to BHF Motion

In opposition to the BHF Motion, Dr. Bayne argues that she has adequately pled the second and third elements of retaliation, that is, that BHF took an adverse employment action in declining to renew her employment contract, effectively terminating her, and that BHF's adverse action was causally linked to her protected activity. Opposition to BHF Motion at 8–12.  As to the adverse employment action, Dr. Bayne argues that "[i]n the context of a retaliation claim, adverse employment actions include not only terminations or demotions, 'but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement.' " *Id.*  at 8 (quoting *Light v. California Dept. of Parks and Recreation*, 14 Cal.App.5th 75, 91-92 (2017)).  This includes " '[t]he failure to renew an employment arrangement, whether at will or for a limited period of time,' " she contends.  *Id.* at 8-9 (quoting *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F3d 315, 320 (3rd Cir. 2008); and citing *Caldwell v. Paramount Unified School District*, 41 Cal.App.4th 189, 198 (1995) (failure to renew a superintendent's contract considered an adverse employment action under the FEHA); and *Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009) ("[A] non-renewal of an employment contract itself is an adverse action.")).

Dr. Bayne argues further that causality is adequately alleged in the FAC because causality can be established based on direct or circumstantial evidence, and where it is based on circumstantial evidence, it is sufficient to allege a " 'convincing mosaic' " of circumstances showing retaliatory intent.  *Id.*  at 9 (quoting *Castro v. DeVry University, Inc.*, 786 F.3d 559, 564 (7th Cir. 2015)).  According to Dr. Bayne, this convincing mosaic "often includes evidence of the 'employer's knowledge that the employee engaged in protected activities; the proximity in time between the protected action and the allegedly retaliatory employment action; and an employer's

1  conduct consistent with a retaliatory intent.' " *Id.* (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376

2  (9th Cir. 1988); and citing *Morgan v. Regents of University of California*, 88 Cal.App.4th 52, 69

3  (2000); *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413, 421 (2007)).

4          Here, Dr. Bayne asserts, she has alleged such a mosaic by alleging facts showing that BHF

5  knew about her protected activity and declined to renew her contract eight months later – a period

6  she contends is " 'easily within a time range that can support an inference of retaliation[,]' "

7  depending on the circumstances.  *Id.* at 10 (quoting *Flores v. City of Westminster*, 873 F.3d 739,

8  750 (9th Cir 2017) (internal quotation and citation omitted)).   She further asserts that she has

9  alleged "that the circumstances surrounding Bowles Hall's adverse employment action against her

10  give rise to an inference of causation[,]" pointing to the statement by Bowles Hall President that

11  "he would have preferred to handle the [complaints against Dr. Vranich] in house, without

12  interference from UC Berkeley," FAC ¶ 20, and his later email expressing "frustration" that Dr.

13  Bayne had reported Dr. Vranich to UC Berkeley, FAC ¶ 21; allegations that her concerns about

14  Dr. Vranich's conduct "were dismissed, and [Bowles Hall] Principal Dennis Lieu noted that 'it's

15  not like [Dr. Vranich] is touching [the students] or something . . . [;]' " *id.*;  the allegation that

16  "students that submitted Title IX complaints about Dr. Vranich . . . faced retaliation," FAC  ¶ 24;

17  and allegations that Dr. Bayne's apartment was vandalized and her authority undermined by the

18  failure to discipline the students she confronted for improper possession of alcohol, FAC ¶ 26.  *Id.*

19  at 10.  All of these actions show a pattern of conduct consistent with retaliatory intent, Dr. Bayne

20  contends.  *Id.*

21          Dr. Bayne rejects BHF's reliance on the time period between the adverse action and the

22  non-renewal of her contract to defeat causation, arguing that " '[w]hen there may be valid reasons

23  why the adverse employment action was not taken immediately, the absence of immediacy

24  between the cause and effect does not disprove causation.' " *Id.*  (quoting *Kachmar v. SunGard*

25  *Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997)).  One such reason, she contends, is that Dr.

26  Vranich had been terminated and terminating Dr. Bayne shortly after that would likely have been

27  disruptive to students living at Bowles Hall.  *Id.*  Similarly, she contends, " 'delay between a

28  plaintiff's protected activities and the purported adverse actions do not preclude a finding of

United States District Court
Northern District of California

causation when the alleged retaliator does not have an opportunity to retaliate sooner.' " *Id.* at 11

(quoting *Pringles v. Wheeler*, 478 F.Supp.3d 899, 918 (N.D. Cal. 2020) (*citing Porter v.*

*California Department of Corrections*, 419 F.3d 885, 888-889 (9th Cir. 2005)).   Because Dr.

Bayne performed her job diligently, she asserts, BHF did not have an opportunity to let her go

until her contract came up for renewal.  *Id.*

      Dr. Bayne also challenges BHF's argument that her Retaliation Claims fail because she has

not alleged facts showing pretext.  *Id.*  at 12.   She contends that at the pleading stage, she need not

allege that BHF's grounds for the adverse action were pretextual because "[r]ebutting a

defendant's proffered rationale for an employment action is not an element of the plaintiff's

pleading burden for retaliation claims." *Id.* at 12–13 (citing *Prier v. Steed*, No. 03-1446-JTM,

2004 WL 624971, at *2 (D. Kan. Mar. 19, 2004);  *Kimura v. Japanese Educ. Inst. of New York*,

No. 96-CV-6063 (JG), 1997 WL 1048909, at *3 (E.D.N.Y. Nov. 4, 1997)).

      Dr. Bayne also contends that Claim Four, for failure to prevent retaliation, is adequately

alleged because she has alleged all three elements of such a claim. *Id.* at 13.  First, she asserts that

she has adequately alleged the first element, that she was subjected to discrimination, harassment

or retaliation, for the reasons discussed above.  *Id.*   Second, she argues that she has adequately

alleged the second element of such a claim, that BHF failed to take all reasonable steps to prevent

discrimination, harassment or retaliation, by alleging that BHF "knew about the retaliation[;] [that]

[m]embers of its Board of Directors made statements disapproving of Dr. Bayne's protected

activity[;] [that] [s]ubsequently, the Board of Directors refused to renew Dr. Bayne's contract[;]

[and that] Bowles Hall failed to take any steps to prevent this retaliatory refusal to renew Dr.

Bayne's contract."  *Id.*  Finally, she argues that she has alleged that this failure on the part of BHF

caused her harm as she has alleged that she suffered "the loss of her job, loss of income, and

emotional distress."  *Id.*

      Dr. Bayne also argues that Claims Five and Six are adequately alleged and therefore

entitle her to recovery. *Id.* at 14–15.  Because BHF does not seek dismissal of those claims, the

Court does not summarize her arguments here.

      Next, Dr. Bayne contends that Claim Eight, for negligent hiring, supervision, and

retention, survives the motion to dismiss because the FAC adequately alleges the required

elements of employer negligence, that is, that: 1) as an employer, BHF had a duty towards Dr.

Bayne; 2) BHF breached that duty by retaining Dr. Vranich despite " 'knowing or [having reason

to believe] that' [he] created the risk of creating a work environment that would be hostile and

offensive to female employees"; 3) BHF's breach of duty was the cause in fact of Dr. Bayne's

injury and the particular injury was of a foreseeable type based on the nature of the breach;  and 4)

that particular harm materialized in the form of Dr. Bayne's hostile work environment at Bowles

Hall.  *Id.* at 15–16 (citing *Keum v. Virgin America Inc.*, 781 F.Supp.2d 944, 951 (N.D. Cal. 2011)).

Dr. Bayne rejects BHF's argument that this claim fails because the alleged harm was directed only

at third parties, *ie*., the students who lived at Bowles Hall, arguing that allegations about Dr.

Vranich's demeaning comments about female students created a hostile work environment for

female employees as well.  *Id.* at 16. Likewise, she asserts, the FAC alleges that not only the

students but also Dr. Bayne suffered harm, "[e]ven though Dr. Vranich's statements were not

directed at Dr. Bayne."  *Id.* Further, Dr. Bayne contends, she suffered "residual harm from Dr.

Vranich's conduct even after he left Bowles Hall [because] [m]ale students close to Dr. Vranich

submitted unreasonably negative evaluations of her work [and therefore] Dr. Bayne was forced to

address Dr. Vranich's improper conduct."  *Id.*

　　　Dr. Bayne also contends her factual allegations are sufficient to state a claim for IIED

because: 1) BHF behaved in an outrageous and extreme manner when it failed to hold accountable

the perpetrators of vandalism targeting Dr. Bayne; 2) Dr. Bayne suffered severe emotional

distress, which she sought to remedy through treatment with two therapists; 3) BHF's conduct was

the cause in fact and proximate cause of Dr. Bayne's emotional distress "if Dr. Bayne can prove

the inference derived from her allegations that Bowles Hall knew about the perpetrators of the

crimes against Dr. Bayne and failed to stop them."  *Id.* at 17. As to the first element, Dr. Bayne

points to her allegations relating to BHF's failure to take action when her apartment was

vandalized and various instances in which items were stolen and then were "mysteriously"

returned.  *Id.* (citing FAC ¶¶ 25, 26, 27).  She contends these allegations are sufficient to raise an

inference that BHF knew who the perpetrators were and nonetheless failed to stop these crimes,

United States District Court
Northern District of California

which would constitute extreme and outrageous conduct.  *Id.*  Therefore, Dr. Bayne contends, she should be permitted to conduct discovery on that question."  *Id.*

Finally, Dr. Bayne argues that she has sufficiently pled the required elements of her NIED claim (Claim Ten).  In particular, she asserts that the first and second elements (existence of duty and breach of that duty) are adequately alleged in the FAC because under California Government Code section 12940(k), employers have a duty to "take all reasonable steps necessary to prevent . . harassment" and BHF breached that duty "[b]y failing to prevent the harassment suffered by Dr. Bayne in the form of vandalism and theft."  *Id.* at 18.  She asserts that the third and fourth required elements (severe emotional distress, and causality between the breach of duty and that distress) are adequately alleged because "Dr. Bayne suffered 'serious' and lasting emotional distress because of Bowles Hall's failure to take reasonable steps to prevent this harassment."  *Id.* at 16–18.

### 2.  Opposition to Regents Motion

In opposition to the Regents' motion, Dr. Bayne argues she has stated valid claims against the Regents by alleging that the UC Regents were her joint employer with respect to the position from which she was terminated.  Opposition to UC Regents Motion at 6-9.   According to Dr. Bayne, in determining whether an entity is a joint employer, " ' "the principal guidepost" is the element of control—that is, "the extent of control that one may exercise over the details of the work of the other." ' "  *Id.* at 6 (quoting *U.S. E.E.O.C. v. Global Horizons, Inc.*, 915 F.3d 631, 639-641 (9th Cir. 2019) (quoting *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 447 (2003))).   Here, she asserts, she has alleged facts showing that the Regents have extensive control over BHF, including her allegations that UC Berkeley took over the investigation of Dr. Vranich and presumably ordered his termination.  *Id.* at 7 (citing FAC ¶¶ 22-23).

To the extent the Court finds that Dr. Bayne's allegations are insufficient to establish the Regents' joint employer status, she asks for leave to amend the complaint to incorporate publicly available information on that question. *Id.* at 1, 8.  For example she points to "a December 20, 2018 Audit of Bowles Hall by the Regents indicat[ing] that the Bowles Hall Foundation 'is required to manage and operate the premises in compliance with [the Regents'] Campus Rules and

Applicable Law.' " *Id.* at 8 (citing Bowles Hall Audit, Project 18-708 Audit and Advisory Services, Project No. 18-708 (available at https://auditreports.ucop.edu/?action=public _ar_display&id=77312ffd4d93f4e0 )).  According to Dr. Bayne, "the audit states that there are a series of " 'complex[] . . . laws, regulations, and university and campus policies and rules that apply to the arrangement [between Bowles Hall Foundation and the Regents].' " *Id.*  Dr. Bayne also points to a provision in a 2016 finance agreements between Bowles Hall and the Regents that allegedly provides:

> [Bowles Hall Foundation] will agree, among other things, to operate [Bowles Hall] in compliance with campus rules, create and maintain a safe and comfortable living environment . . . . [Bowles Hall Foundation] will agree to appoint a housemaster and a dean. The duties of the housemaster may include, among other duties, student governance and discipline and acting as an ambassador to alumni, parents and the campus. . . . The Regents will have the right to appoint three members of the [Bowles Hall Foundation] board of directors.

*Id.* (quoting 2016 Finance Agreement (available at http://cdiacdocs.sto.ca.gov/2015-1012.pdf)). Dr. Bayne asserts, "Given that another portion of the agreement indicates that the Bowles Hall Foundation board 'may consist of between three and twenty members,' it may very well be that the Regents have near total control over Bowles Hall." *Id.*

Dr. Bayne argues further that she has adequately alleged that the Regents knew or should have known of BHF's misconduct, which is required to establish liability on the part of the Regents as to conduct by BHF.  *Id.* at 9 (citing *Global Horizons*, 915 F.3d at 641).   In particular, she points to her allegations showing that the Regents knew of her report about Dr. Vranich's conduct and were aware from other students who complained to UC Berkeley that they were being retaliated against for complaining and therefore, that the Regents should have been aware that Dr. Bayne was at risk of retaliation and taken measures to prevent it.  *Id.*  According to Dr. Bayne, publicly available information also shows that the Regents were represented on the Board of Directors—the entity that allegedly retaliated against Dr. Bayne, further supporting an inference that the Regents knew about BHF's misconduct.  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

### E.    Defendants' Replies

#### 1.  BHF Reply

In its Reply, BHF does not address Dr. Bayne's argument that she has adequately alleged an adverse employment action by alleging BHF declined to renew her contract and therefore it implicitly concedes that this element is adequately alleged.  BHF reiterates its argument that Dr. Bayne has not alleged sufficient facts to show causality, however, emphasizing the lack of temporal proximity between the adverse employment action and the failure to renew her contract. BHF Reply to Plaintiff's Opposition to Motion to Dismiss at 2–4.

As to Dr. Bayne's claim for failure to prevent unlawful discrimination or retaliation (Claim Four), BHF repeats its previous argument that because Dr. Bayne fails to state a retaliation claim due to an insufficiently pled causality element, and she does not state a claim for discrimination, there can be no liability for failure to prevent retaliation. *Id*. at 4 (citing *Trujillo v. North Co. Trans. Dist.*, 63 Cal.App.4th 280, 2809 (1998)).

As to Dr. Bayne's claim for negligent hiring, supervision, and retention (Claim Eight), BHF rejects Dr. Bayne's argument that she has adequately alleged she suffered harm in the form of a hostile work environment, arguing that Dr. Bayne fails to allege specific facts about Dr. Vranich's conduct as it related to Dr. Bayne's work environment, including whether the conduct took place in her immediate work environment or if she personally witnessed it. *Id*. at 4–6.

BHF repeats its previous arguments challenging Dr. Bayne's IIED claim (Claims Nine), arguing that its alleged failure to hold vandals accountable is neither extreme nor outrageous and seeking continued treatment with a mental health professional is not an indication of severe emotional distress.  *Id*. at 6–7.

Finally, BHF reiterates its argument that Dr. Bayne's claim for NIED (Claim Ten) fails because her "allegations in the FAC are entirely conclusory and do not include factual allegations to support a cause of action for negligence [such as] sweeping references to 'embarrassment, anxiety, humiliation, fear and worry' with no facts to support such symptoms or conditions". *Id*. at 7–8.

United States District Court
Northern District of California

### 2. Regents Reply

The Regents contend in their Reply that Dr. Bayne fails to allege that they were her joint employer along with BHF with respect to her position as Dean of Students at Bowles Hall; instead, the Regents assert, Dr. Bayne's allegations point to the opposite conclusion. Regents Reply at 2.  The Regents point in particular to Dr. Bayne's allegations that: 1) she was hired by BHF to be Dean of Students and by the Regents as a faculty member in UC Berkeley's Psychology Department; 2) her job performance as Dean of Students was evaluated by BHF and not the Regents; and 3) she sought resources and guidance from BHF – and not the Regents  – regarding issues related to Dr. Vranich.  *Id.* (citing FAC ¶¶ 10, 12).   Further, the Regents assert, Dr. Bayne's allegations make clear that the alleged adverse employment action was only taken by BHF, which is a separate entity from the Regents.  *Id.* at 2-3 (citing FAC ¶¶ 20, 23, 28, 31, 32).

According to the Regents, the only allegations Dr. Bayne points to in support of her assertion that the Regents are a joint employer are the allegations that "UC Berkeley took over the investigation into Dr. Vranich's misbehavior and instructed [BHF] to not take any steps without collaborating with UC Berkeley"; and that Dr. Vranich "was terminated by [BHF], *presumably* at the request of UC Berkeley." *Id.*  at 3 (citing Opposition at 7 (quoting FAC ¶¶ 22-23)) (emphasis added).  These allegations fall short, the Regents contend, because they relate to Dr. Vranich's position with BHF, not Dr. Bayne's, and therefore, they do not establish a joint employer relationship as to Dr. Bayne.  *Id.*  Moreover, the Regents argue, the use of the word "presumably" in paragraph 23 of the FAC indicates that Dr. Bayne does not know if UC Berkeley was involved in Dr. Vranich's termination and is merely speculating that it was.  *Id.*

The Regents further assert that while Dr. Bayne has cited the appropriate test for determining whether a joint employer relationship exists – looking to the "amount of control over the worker's compensation, hours, and terms of employment" the entity exercises – she has not alleged "any facts establishing that The Regents exercised any control over Plaintiff's compensation, hours, or terms of employment at BHF."  *Id.*  at 4-5.  The Regents acknowledge Dr. Bayne was (and remains) an employee of UC Berkeley but contend this fact "cuts against any theory that The Regents somehow sought Plaintiff's termination from BHF, and it also

distinguishes this case from each of the cases cited by Plaintiff in the opposition." *Id.* at 5.

To the extent that Dr. Bayne points to publicly available information that may demonstrate that the Regents are her joint employer with BHF, the Regents argue that it is improper to introduce evidence in support of the Opposition without making a request for judicial notice. *Id.* Further, the Regents assert, the evidence Dr. Bayne cites would not be a proper subject for judicial notice in any event. *Id.* The Regents argue that even if the Court were to consider this evidence, it would not establish a joint employer relationship because none of the cited evidence shows that the Regents "actually controlled the compensation, hours, or terms of employment of Plaintiff or an employee in Plaintiff's role." *Id.* According to the Regents, "[t]he fact that the separate entities have dealings with each other and agree there should be a safe living environment does not establish joint-employer liability." *Id.* at 5-6.

The Regents also argue that Dr. Bayne fails to allege the second required element for asserting liability against the Regents on a joint employer theory, namely, that The Regents knew or should have known about BHF's alleged misconduct and failed to prevent it. *Id.* at 6. According to the Regents, Dr. Bayne does not allege any facts to support this requirement. *Id.*

Finally, the Regents again assert that the Court should dismiss Dr. Bayne's claims against them with prejudice and without leave to amend because amendment would be futile. *Id.* at 6-7.

## III.    ANALYSIS

### A.   Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990). A complaint must "contain either direct or inferential allegations respecting all the material

elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion

couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

(alteration in original). Rather, the claim must be " 'plausible on its face,' " meaning that the

plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S.

at 570).

### B. Whether Plaintiff's Claims Against BHF Are Adequately Alleged (Claims One, Two, Three, Four, Seven, Eight, Nine and Ten)

#### 1. Retaliation Claims (Claims One, Two, Three and Seven)

To prevail on her Retaliation Claims, Plaintiff must establish the following elements: 1)

she engaged in a protected activity; 2) BHF subjected her to an adverse employment action; and 3)

a causal link exists between the protected activity and adverse action. *See Yanowitz v. L'Oreal*

*USA, Inc*. 36 Cal.4th 1028, 1042 (2005) (listing elements of prima facie case of retaliation under

FEHA); *Steiner v. Showboat Operating Co*., 25 F.3d 1459, 1464 (9th Cir.1994) (listing same

prima facie elements for Title VII retaliation claim); *Emeldi v. Univ. of Oregon*, 673 F.3d 1218,

1223 (9th Cir. 2012) (holding that prima facie elements for Title IX retaliation claim are the same

as for a Title VII retaliation claim); *Mokler v. County of Orange* 157 Cal.App.4th 121, 138 (2007)

1    (listing same elements for prima facie case of retaliation under California Labor Code section

2    1102.5 retaliation).  The Court finds that all of these elements are adequately alleged.

3                 a.   Protected Activity

4             Under the California Labor Code, employers are prohibited from "[retaliating] against an

5    employee for disclosing information . . . if the employee has reasonable cause to believe that the

6    information discloses a violation of state or federal statute . . . or local, state, or federal rule or

7    regulation…"  Cal. Lab. Code section 1102.5(b).  Similarly, under FEHA, an employer may not

8    retaliate against an employee who has "opposed any practices forbidden under [FEHA] or because

9    the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]."  Cal.

10   Gov't Code § 12940(h);  *see also Kelley v. Corrections Corp. of America*, 750 F.Supp.2d 1132,

11   1144 (E.D. Cal. 2010) ("[P]rotected activity must have some element of express opposition to an

12   action or policy or practice of the employer.").  Likewise, under Titles VII and IX, an employee's

13   complaints regarding the maltreatment of others is a protected activity "even if the employee is not

14   a member of the class that [she] claims suffered from discrimination, and even if discrimination

15   [she] complained about was not legally cognizable." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th

16   Cir. 2000) (citing *Moyo v. Gomez*, 40 F.3d 982 (9th Cir.1994)).  BHF does not dispute that Dr.

17   Bayne has adequately alleged this element as to all of her Retaliation Claims by alleging that she

18   complained of Dr. Vranich's treatment of women to both BHF and the UC Berkeley Office for the

19   Prevention of Harassment and Discrimination.

20                b.   Adverse Action

21            BHF contends that Dr. Bayne's allegation that she was terminated when BHF failed to

22   renew her contract does not adequately allege an adverse employment action by BHF because it

23   simply opted not to renew a contract it had no obligation to renew.  This argument is

24   unconvincing.

25            An employment action is adverse if it materially affects the compensation, terms,

26   conditions, or privileges of employment. *Knox v Contra Costa County*, No. 20-CV-01449-JCS,

27   2021 WL 2016138, at 5 (N.D. Cal. 2021) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225

28   F.3d 1115, 1126 (9th Cir. 2000)). The Ninth Circuit defines adverse employment action broadly.

United States District Court
Northern District of California

*Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  It has found that not only termination but also a wide array of other actions, including lateral transfers, unfavorable job references, and changes in work schedules can constitute adverse employment action because they are "reasonably likely to deter employees from engaging in protected activity." *Id.*  Dr. Bayne has alleged facts raising a plausible inference that BHF officers and Board members acknowledged that she was meeting the requirements of her position and would likely have renewed her contract but decided instead not to renew it in retaliation for her filing an official complaint about Dr. Vranich. Because it is plausible that the alleged conduct by BHF would deter an employee from engaging in protected activity, and the action effectively terminated Plaintiff's employment at Bowles Hall, the Court finds that she has plausibly alleged that she was subjected to an adverse employment action even if she likely could *not* assert a claim for breach of contract against BHF on these facts. The Court notes that BHF has not pointed to any authority that establishes, as a matter of law, that a claim for retaliation based on declining to renew a contract is barred and the Court has found no such authority.

Nor does the Court find persuasive BHF's argument that its failure to renew Dr. Bayne's contract is not an adverse employment action because Plaintiff has alleged no facts showing that BHF's reasons for failing to renew her contract were pretextual.  A plaintiff's burden to show that the reasons a defendant has given for an alleged adverse employment actions were pretextual arises at the summary judgment stage of discrimination cases, when courts traditionally perform the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Supreme Court has made clear, however, that at the pleading stage, "a complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas*." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002).  Rather, all that is required is a "short and plain statement of the claim" that gives rise to an inference of discrimination.  *McKinney v. City of Hawthorne,* No. CV08-07-GW(EX), 2008 WL 11338235, at *2 (C.D. Cal. May 15, 2008) (holding that plaintiff was not required to allege facts showing pretext to survive a Rule 12(b)(6) motion seeking dismissal of her discrimination and retaliation claims); *see also Kimura v. Japanese*

*Educational Institute of New York*, No. 96–CV–6063 (JG), 1997 WL 1048909, 3 (E.D.N.Y. 1997) (citing *McNulty v. New York City Dep't of Fin.*, 941 F. Supp. 452, 456 (S.D.N.Y.1996)) ("a plaintiff's failure to show pretext or intentional discrimination is inconsequential to a 12(b)(6) motion"). Therefore, the Court rejects this argument.

### c. Causality

BHF relies heavily on the eight-month period of time that elapsed between Dr. Bayne's report about Dr. Vranich to UC Berkeley and the non-renewal of her employment contract with BHF to argue that she fails to allege causality. The Court rejects this argument and concludes that Dr. Bayne has pled a sufficient causal link between her protected activity and BHF's adverse employment action to survive BHF's Rule 12(b)(6) challenge.

"Causation . . . may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). There is no bright-line rule governing the amount of time that will support an inference of causation. *Flores v. City of Westminster*, 873 F.3d 739, 750 (9th Cir. 2017). In *Flores*, the court observed that "we have held that, '[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.' " *Id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 977-978 (9th Cir. 2003) (declining to adopt "any bright-line rule about the timing of retaliation")). "Although a lack of temporal proximity may make it more difficult to show causation, 'circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference.' " *Porter v. Cal. Dep't Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997) (internal quotations and citation omitted)). Likewise, "[w]hen there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Kachmar*, 109 F.3d at 178.

Here, the time that elapsed is long enough that by itself, it might not be sufficient to support a plausible inference of causality. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that where nine months had elapsed between the protected activity and the

United States District Court
Northern District of California

adverse employment action, no inference of causality arose based on temporal proximity and further concluding that there was no other direct or circumstantial evidence of causality because during the interim period the employer had given the employee a pay raise and selected her for a "prestigious assignment.").  Plaintiff has alleged other facts, however, that support a plausible inference of causality, namely, that BHF officers knew that she had engaged in protected activity and had expressed displeasure that she had done so, *see* FAC ¶¶ 16, 18, 20-22, and that she was subsequently subjected to a pattern of antagonism, including allegations that BHF failed to take corrective action when her apartment was vandalized and items were taken from her storage locker at Bowles Hall, *see* FAC ¶¶ 16, 20-21, 24-28, 31-32.  In addition, Dr. Bayne has alleged facts that could support a plausible inference that BHF waited until her contract expired to terminate her because she was fulfilling the requirements of her job at Bowles Hall and terminating her mid-year could have caused disruption.  *See* FAC ¶ 16; *Kachmar*, 109 F.3d at 177 (holding that causality was adequately alleged despite lapse of time between protected activity and termination because the defendant, a three-attorney firm in which the plaintiff was a senior attorney, may have recognized that immediate termination of the plaintiff would have caused disruption to the firm's business).

Considering the totality of the circumstances alleged, the Court finds that Dr. Bayne has adequately alleged causality and therefore also concludes that her Retaliation Claims against BHF are adequately pled.

### 2.  Failure to Prevent Retaliation (Claim Four)

BHF contends that because Dr. Bayne has failed to allege retaliation by BHF, her claim for failure to prevent retaliation also fails.  BHF Motion at 6.  It further contends the FAC does not plead the "basic elements" of this claim, arguing in particular that "the FAC does not plead BHF's failure to take reasonable steps to prevent retaliation."  *Id.*  The Court rejects the first argument for the reasons set forth above.  The Court also rejects the second argument.

Under FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code section 12940(k).

 To prevail on a claim asserted under this section, a plaintiff must establish three essential elements: 1) the plaintiff was subjected to discrimination, harassment or retaliation;  2) the defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) the defendant's failure caused plaintiff to suffer injury, damage, loss or harm.  *Leliand v. City and County of San Francisco* 576 F. Supp.2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11); *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.App.4th 1216, 1240 (2006), overruled on other grounds by *Jones v. The Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173–74 (Cal. 2008)  (explaining that for the purposes of section 12940(k), retaliation is a form of discrimination and therefore actionable under that section).   As discussed above, Dr. Bayne has sufficiently alleged the first element as to BHF, that is, that it retaliated against her for protected activity.  The Court also finds that Dr. Bayne has sufficiently alleged the third element, that she was injured by the retaliation, by alleging that she suffered from mental health issues that required treatment and that her career was damaged.

Plaintiff's counsel clarified at the hearing that the theory on which her failure to prevent claim is based is that BHF's Board of Directors was aware that negative student evaluations of Dr. Bayne were retaliatory in nature yet relied upon them in deciding not to renew Dr. Bayne's contract.  Plaintiffs stipulated that the claim is not based on BHF's failure to prevent or adequately respond to vandalism and theft of Dr. Bayne's property when she lived at Bowles Hall.   While this theory appears to be somewhat duplicative of Dr. Bayne's direct claims for retaliation against BHF, which are based on the theory that the Board of Directors retaliated against her for her complaints about Dr. Vranich by deciding not to renew her contract, Plaintiffs' allegations also appear to be adequate to state a claim for failure to prevent retaliation.  Therefore, the Court rejects BHF's challenges to this claim.

### 3. Negligent Hiring, Supervision and Retention Claim Against BHF (Claim Eight)

BHF argues Dr. Bayne's claim for negligent hiring, supervision and retention is not sufficiently alleged because it is based on the theory that Dr. Vranich was negligently hired and supervised but Dr. Bayne does not allege specific facts showing that Dr. Vranich's alleged

United States District Court
Northern District of California

1  misconduct was aimed at her.  Therefore, BHF asserts, Dr. Bayne cannot demonstrate she suffered

2  any cognizable harm that was caused by the hiring and retention of Dr. Vranich. The Court

3  disagrees.

4        Under California law, employers may be held liable for the conduct of their employee

5  "where the employer was negligent in the hiring, training, supervising, or retaining of that

6  employee." *Keum v. Virgin America Inc*., 781 F.Supp.2d 944, 951 (N.D. Cal. 2011) (citing *Delfino*

7  *v. Agilent Technologies, Inc*., 145 Cal.App.4th 790, 815 (2006)).  The elements of such a claim are

8  as follows: 1) The employer had a duty towards the plaintiff; 2) the employer breached that duty

9  by hiring, training, supervising, or retaining an unfit employee when the employer knew or should

10  have known that the employee would pose a particularized risk or hazard to others; 3) there was a

11  causal connection between the defendant's negligence in selecting or controlling the employee, the

12  employee's employment or work, and the harm suffered by the plaintiff; and 4) that particular

13  harm materializes. *Id*. There can be no liability for negligence unless the employer knows or has

14  reason to believe its hiring, supervision, and retention of an employee "created a particular risk or

15  hazard and that particular harm materializes."  *Id*.

16        Dr. Bayne contends the causality requirement is met because she has alleged that BHF's

17  hiring and retention of Dr. Vranich resulted in a hostile work environment for female employees,

18  including Dr. Bayne.  This case would present a close call if the complaint alleged only that Dr.

19  Vranich's conduct was aimed at female students who resided at Bowles Hall and not at Dr. Bayne.

20  Although California courts permit hostile work environment claims under such circumstances, the

21  burden for prevailing on such a claim is high.  In *Lyle v. Warner Brothers Television Productions*,

22  the California Supreme Court addressed whether a FEHA claim for a sexually hostile work

23  environment could be asserted by a plaintiff, who was a woman, on the basis of sexual harassment

24  of *other* women in the plaintiff's workplace.  38 Cal.4th 264, 284-85 (2006).  It found that while a

25  plaintiff can assert a sexual harassment claim based on conduct that is not aimed directly at the

26  plaintiff, such a claim "requires 'an even higher showing' than a claim by one who had been

27  sexually harassed without suffering tangible job detriment: such a plaintiff must 'establish that the

28  sexually harassing conduct permeated [her] direct work environment.'"  *Id*. (quoting *Fisher v. San*

*Pedro Peninsula Hospital* 214 Cal.App.3d 590, 610 (1989)).   "To meet this burden, the plaintiff must generally show that the harassment directed at others was in her immediate work environment, and that she personally witnessed it." *Id.*   The court explained, "The reason for this is obvious: if the plaintiff does not witness the incidents involving others, 'those incidents cannot affect . . . her perception of the hostility of the work environment.'" *Id.*   at 285 (quoting *Beyda v. City of Los Angeles*, 65 Cal.App.4th 511, 519 (1998)).

Here, the facts establish that Dr. Bayne was aware of the harassing conduct aimed at students as she alleges that this conduct was reported to her by the students, who sought her assistance in her capacity as Bowles Hall Dean.  *See* FAC ¶¶ 13-14, 18.  But Dr. Bayne does not allege that she personally witnessed the harassment of the students and it is not clear that her awareness of it is sufficient to establish under California case law that the harassment permeated her *direct* work environment.   The Court need not decide that question, however, because Dr. Bayne also alleges facts that raise an inference that the hostile work environment was aimed directly at her, namely, that Dr. Vranich "was trying to sabotage Dr. Bayne's reputation[,]"  and that she was the direct target of hostility from students closely associated with Dr. Vranich.  FAC ¶¶ 17, 26.   The Court therefore finds that Dr. Bayne has adequately pled her negligent supervision claim.

### 4.   Intentional Infliction of Emotional Distress (IIED) Claim Against BHF (Claim Nine)

BHF contends Dr. Bayne's IIED claim is inadequately pled because she has alleged neither conduct that is extreme or outrageous, nor that she has suffered extreme emotional distress.  While the Court finds that Dr. Bayne has adequately alleged that she has suffered extreme emotional distress, *see* FAC ¶ 34, it concludes that she has failed to allege any conduct that rises to the level of "extreme or outrageous."

The FAC alleges that BHF "engaged in extreme conduct with the intent of causing, or recklessly disregarding the probability that their extreme conduct, including but not limited BHF intimidating and humiliating Plaintiff to comply with Defendant's demands[,] would cause emotional distress."  FAC ¶ 86.  Although the FAC does not identify the specific basis for the

United States District Court
Northern District of California

1   IIED claim, Dr. Bane elaborates in her Opposition, pointing to her allegations that: 1) she was the

2   victim or repeated vandalism and theft and that Bowles Hall did not hold the perpetrators

3   responsible;  and 2) after Dr. Bayne complained to Bowles Hall, some of the items stolen from her

4   were promptly and mysteriously returned, giving rise to the inference that although Bowles Hall

5   may have known about the crimes perpetrated against Dr. Bayne and the identities of the criminals

6   Bowles Hall did not hold the perpetrators accountable. Opposition to BHF Motion at 17 (citing

7   FAC  ¶¶ 25, 26, 27).

8            The elements of IIED in California are "(1) extreme and outrageous conduct by the

9   defendant with the intention of causing, or reckless disregard of the probability of causing,

10   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual

11   and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes*

12   *v. Pair* 46 Cal.4th 1035, 1050 (2009). Conduct is "outrageous" when it is so "extreme [that it]

13   exceeds all bounds of that usually tolerated in a civilized community." *Id*. at 651 (citing *Potter v.*

14   *Firestone Tire & Rubber Co*. 6 Cal.4th 965, 1001 (1993)). Generally, plaintiffs cannot recover for

15   "mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults,

16   indignities or threats which are considered to amount to nothing more than mere annoyances."

17   *Yurick v. Superior Court* 209 Cal.App.3d 1116, 1128 (1989).

18            In the employment context, "an employer's intentional misconduct in connection with

19   actions that are a normal part of the employment relationship . . . resulting in emotional injury is

20   considered to be encompassed within the [worker's] compensation bargain, even if the misconduct

21   could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause

22   emotional disturbance.'" *Yau v. Santa Margarita Ford, Inc*. 229 Cal.App.4th 144, 162 (2014).

23   Normal conduct within an employment relationship includes workplace discipline, termination,

24   demotion, promotion, criticisms, and frictions in negotiations as to grievances.  *Id*. at 161 (plaintiff

25   could not recover despite suffering emotional distress due to being fired because his termination

26   was part of a normal employment relationship conduct, which is pre-empted by the Workers

27   Compensation Act), 837; *c.f. Alcorn v. Anbro Engineering, Inc*. 2 Cal.3d 493, 496-497 (1970)

28

1  (supervisor shouting insulting epithets, terminating employment, and humiliating plaintiff was

2  extreme and outrageous conduct unrelated the course of normal employment conduct).

3       Even intentional misconduct on the part of an employer that is unrelated to actions that are

4  a normal part of the employment relationship, however, may not be cognizable if insufficiently

5  extreme or outrageous. *Moncada v. West Coast Quartz Corp*. 221 Cal.App.4th 768, 781 (2013)

6  (defendant employer's misconduct in intentionally misleading plaintiff employee about

7  compensation amounts in order to retain plaintiff until the company was sold was not extreme or

8  outrageous enough to support an IIED claim); *see also Trerice v. Blue Cross of California*, 209

9  Cal.App.3d 878, 883 (1989) (conduct of respondent employers, in ostracizing plaintiff employee

10  prior to her termination and misleading plaintiff regarding termination packages, resulting in

11  crying, anxiety, and discomfort, was not extreme or outrageous enough to support an IIED claim).

12       Here, the Court assumes that BHF's conduct in admonishing Dr. Bayne for reporting Dr.

13  Vranich's alleged misconduct and not diligently following up on her theft report is not part of the

14  normal employment relationship conduct. Nonetheless, it concludes that the alleged conduct by

15  BHF does not rise to the level of extreme or outrageous.  These allegations amount to allegations

16  of inaction on BHF's part, and the allegation that BHF knew who the perpetrators were based on

17  the "mysterious" return of some items after Dr. Bayne notified BHF of the theft is too speculative

18  to give rise to a plausible inference of such knowledge.   Therefore, the Court concludes that Dr.

19  Bayne does not allege sufficient facts to support the first element of her IIED claim.   Dr. Bayne

20  will be given leave to amend as to this claim.

21       **5.   Negligent Infliction of Emotional Distress (NIED) Claim Against BHF**
          **(Claim Ten)**

22

23       BHF contends the NIED claim is insufficiently alleged because Dr. Bayne fails to plead

24  "even the basic elements of an NIED claim," and as an example, points to the fifth required

25  element that "[BHF]'s conduct was a substantial factor in causing Plaintiffs' serious emotional

26  distress." BHF Motion. at 9.  BHF argues "Dr. Bayne does not allege anywhere that [such

27  causality existed]." *Id*. at 9. The Court disagrees.

28

United States District Court
Northern District of California

1    Because negligent infliction of emotional distress is a tort of negligence in California, the

2    elements of the claim are duty, breach of duty, causation—both in fact and proximately—and

3    damages. *Huggins v. Longs Drug Stores California* 6 Cal.4th 124, 129 (1993).  BHF does not

4    dispute that under Cal. Gov't Code section 12940(k), it has a duty to "take reasonable steps to

5    prevent and correct wrongful behavior […] in the workplace" and therefore owed a duty to Dr.

6    Bayne.  Further, Dr. Bayne adequately alleges that the duty was breached when BHF failed to take

7    any action to prevent the harassment she suffered in form of vandalism and theft.   The Court also

8    finds that Dr. Bayne sufficiently pled the causation element of negligence, that BHF's failure to

9    prevent or correct student harassment resulted in Plaintiff's emotional and psychological harm.

10   Thus, the Court concludes Dr. Bayne has sufficiently pled the elements of her NIED claim.

### C.   Whether Plaintiff's Claims Against the Regents Are Adequately Alleged (Claims One, Two, Three, Four and Seven)

13    The Regents contend all of the claims asserted against them fail to state a claim because

14   Plaintiff has not alleged that they were a joint employer as to the position at Bowles Hall from

15   which she was terminated.   They further assert the Retaliation Claims (Claims One, Two, Three

16   and Seven) fail as to the Regents because Dr. Bayne has not alleged that the Regents took any

17   adverse employment action against her.  Finally, they contend Claim Four, for failure to prevent

18   retaliation and discrimination, fails because Dr. Bayne has not alleged any retaliation or

19   discrimination by the Regents.  Dr. Bayne does not point to any allegations in the FAC reflecting

20   specific conduct on the part of the Regents in connection with her termination or the alleged

21   retaliation.  Instead, she argues that the Regents can be held liable under the joint employer

22   doctrine.  Thus, all of the arguments made by the Regents in their motion turn on that question.

23    Under Title VII, a plaintiff may have more than one "employer" for purposes of liability.

24   *U.S.E.E.O.C. v. Global Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) ("The law recognizes

25   that two entities may simultaneously share control over the terms and conditions of employment,

26   such that both should be liable for discrimination relating to those terms and conditions.").  In

27   *Global Horizons*, the Ninth Circuit concluded that the common-law agency test governs the

28   determination of whether an entity is a joint employer in the Title VII context.  *Id.*  at 638.  The

United States District Court
Northern District of California

27

court described that test as follows:

> Under the common-law test, "the principal guidepost" is the element of control—that is, "the extent of control that one may exercise over the details of the work of the other." *Clackamas*, 538 U.S. at 448, 123 S.Ct. 1673 (internal quotation marks omitted). The Court has provided a non-exhaustive list of factors to consider when analyzing whether the requisite control exists:
>
>> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
>
> [*National Mutual Ins. Co. v. Darden*, 503 U.S.318, 323–24, 112 S.Ct. 1344 (2003)] (internal quotation marks omitted). There is "no shorthand formula" for determining whether an employment relationship exists, so "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id*. at 324, 112 S.Ct. 1344 (internal quotation marks omitted).

*Id.* This test also applies in the context of Title IX.  *See Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1223 (9th Cir. 2012) (holding that Title VII framework governs Title IX retaliation claims).

Likewise, California courts that have considered the meaning of "joint employer" under FEHA have relied heavily on federal court decisions interpreting Title VII.  *Hall v. Apartment Inv. & Mgmt. Co*., No. C 08-03447 CW, 2011 WL 940185, at *5 (N.D. Cal. Feb. 18, 2011)(citing *Vernon v. State*, 116 Cal.App.4th 114, 123, (2004)).  In *Vernon*, the court observed that "[t]he common and prevailing principle espoused in all of the tests directs us to consider the 'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." 116 Cal. App. 4th at 124 (citations omitted).  It listed the following factors that courts consider in determining whether an entity is a joint employer:

> Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments,

> the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.

*Id.* at 125 (citations omitted).

Here, Dr. Bayne's FAC contains virtually no allegations reflecting that under the totality of the circumstances, the Regents exercise control over her with respect to her position as Dean of Students at Bowles Hall.  The closest she comes to alleging control are her allegations that the Regents took over the investigation of Dr. Vranich's misconduct and "presumably" instructed Bowles Hall that he be terminated.  FAC ¶¶ 23-24.  Construed liberally, this might support an inference that the Regents have the power to terminate employees of Bowles Hall, including Dr. Bayne, which is one factor that may be relevant to the question of whether the Regents are a joint employer.  The Court concludes, however, that this single factor is insufficient to support a plausible inference the Regents are a joint employer – especially where it is evident from the allegations, which "presume" that the Regents directed that Dr. Vranich be terminated, that Dr. Bayne is simply speculating on this point.

Dr. Bayne's reliance on the joint-employer theory fails for the further reason that "even if a joint-employment relationship exists, one joint employer is not automatically liable for the actions of the other." *Global Horizons*, 915 F.3d at 641.  Rather, liability may only be imposed if the defendant employer knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures. *Id.*  Here, Dr. Bayne has not alleged facts showing that the Regents knew or should have known of her termination; nor has she alleged facts supporting an inference that the Regents knew or should have known of the other forms of retaliation she alleges she was subjected to.  Consequently, she has failed to plead that the Regents can be liable as to any of the claims asserted against them on the basis that they are a joint employer.

Because the Court cannot say for sure that Dr. Bayne will be unable to cure these defects by adding more robust allegations as to the Regents' control over her position at Bowles Hall and knowledge of the alleged retaliation, the Court will permit Dr. Bayne to amend the complaint as to

29

this claim.

## IV.     CONCLUSION

For the reasons stated above, the Regents' motion to dismiss is GRANTED and the Court therefore dismisses Claims One, Two, Three, Four, and Seven as to the Regents only with leave to amend.  BHF's motions to dismiss is GRANTED in part and DENIED in part.  In particular, the Court GRANTS the BHF Motion as to Claim Ten (IIED) and dismisses that claim with leave to amend.  In all other respects, the BHF Motion is DENIED.  Plaintiff may file an amended complaint seeking to cure the deficiencies identified herein no later than **September 3, 2021.**

**IT IS SO ORDERED.**

Dated:  August 5, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California